UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
02 FEB 15 PM 2:25
N.D. OF ALABAMA

BUFORD CRUTCHER, )
)
    Plaintiff, )
)
vs. )    Civil Action No. CV 99-S-3286-NE
)
UNITED STATES OF AMERICA, )
)
    Defendant. )

ENTERED

**MEMORANDUM OPINION**

On May 5, 1998, the Internal Revenue Service notified plaintiff, Buford Crutcher, that penalties had been assessed against him pursuant to 26 U.S.C. § 6672, for the failure of Science & Technology, Inc. to pay employee withholding taxes. Plaintiff then was a stockholder, director, officer (Secretary/Treasurer), and employee (Vice President of Operations) of that corporation. The statute upon which the IRS notification was based provided:

> (a) General rule.— Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II of subchapter A of chapter 68 for any offense to which this section is applicable.

26 U.S.C. § 6672(a). The term "person," as used in § 6672(a), is defined as meaning, among other things, an officer or employee of a corporation who is under a duty to collect, truthfully account for, and pay over any tax imposed by the Internal Revenue Code. *See* 26 U.S.C. § 6671(b).[1]

Plaintiff filed this action on December 10, 1999, asserting that he was not a person charged

---

[1] In full text, 26 U.S.C. § 6671(b) reads as follows: "(b) Person defined.— The term 'person,' as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

by the foregoing provisions with the duty of collecting, accounting for, and paying over to the Internal Revenue Service taxes withheld from the wages or salaries of employees of Science & Technology, Inc., and that the assessment and collection of penalties from him was arbitrary, discriminatory, erroneous, and illegal.[2] The United States filed an answer and counterclaim on March 24, 2000, seeking the recovery of the "unpaid balance of the trust fund recovery penalties, presently due and owing from the plaintiff, in the amount of $1,209,247.78, plus interest thereon as is provided by law."[3]

The action now is before the court on defendant's motion for summary judgment in favor of the government on all claims asserted by plaintiff, and, in its counterclaim. Upon consideration of the pleadings, evidentiary submissions, and briefs, the court concludes that the motion is due to be granted in both respects.

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

---

[2] Complaint at 3, ¶¶ 11-12.
[3] Defendant's Answer and Complaint at 6.

2

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

## I. SUMMARY OF FACTS

Science & Technology, Inc. ("SciTek") was incorporated on May 14, 1976, in Madison County, Alabama.[4] SciTek's primary business is the performance of so-called "service contracts" for the United States government.[5] From 1976 to the present, plaintiff has served as a member of SciTek's Board of Directors.[6] Plaintiff also served as corporate Secretary/Treasurer from approximately 1984 through 1998, and as Vice President of Operations from approximately 1995 through 1998.[7] SciTek terminated plaintiff's employment during 1998. Even so, from then until now he has continued to be a member of the corporation's Board of Directors.[8] Plaintiff, by affidavit, described his various roles during the course of his association with SciTek as follows:

> From the early 1980's to 1998 I have been an employee, 12.7% stockholder and member of the Board of Directors of Science & Technology, Inc. (hereafter "SciTek"). During my employment, I had the title of Vice President of the Company. During the time that I worked for SciTek, my older brother, Jerry Crutcher, has

---

[4] Defendant's evidentiary submission, Exhibit 1.
[5] *Id.*, Exhibits 2.
[6] *Id.*, Exhibits 1, 17.
[7] *Id.*, Exhibits 17, 21-23, 28, 30.
[8] *Id.*, Exhibits 17-18.

3

always been President, owned over 60% of the stock, and served as chairman of the Board of Directors. My brother, Jerry, has always exercised a strong hand in running SciTek. He has been willing to listen to information that I and other employees have gathered concerning the business affairs of the company, but he has also been the decision maker. Jerry always directed the payment of corporate debts and expenses. During my entire time of employment at SciTek, he never asked me my opinion about which creditors should be paid.

During the 1990's, SciTek has had an in house accounting staff. That accounting staff has never been under my control or direction. As one of two corporate vice presidents, my primary duties were to secure contracts for the company and oversee the performance of some of those contracts.

I did have check writing authority over some of the bank accounts of SciTek. However, I would only sign checks when my brother, Jerry, was unavailable to sign them. It was not uncommon when I was in the main office to have someone from accounting to bring a big stack of checks for my signature due to Jerry and Robert Richardson, SciTek's Executive Vice President[,] not being available. I would often not even look at the payees because it was understood that Jerry had directed that the checks could be prepared and distributed. Jerry would regularly tell the people in accounting what creditors would be paid. I never told the accounting staff to prepare checks for the payment of creditors.[9]

Robert Richardson, SciTek's former Executive Vice President, testified in deposition that neither he nor plaintiff signed checks, unless those checks had been pre-approved by Jerry Crutcher.[10] Annie Minor, an accountant for SciTek, also testified in deposition that Jerry Crutcher was the only person who gave instructions as to the preparation of checks.[11] He decided which vendors were to be paid, and when.[12]

In 1996, SciTek lost a major government contract, under the terms of which it had provided maintenance and repair services to Fort Huachuca in Arizona.[13] The Fort Huachuca contract had

---

[9] Plaintiff's Motion in Opposition to Summary Judgment, Exhibit A.

[10] *Id.*, Exhibit B, at 10, 27.

[11] *Id.*, Exhibit C, at 7-8, 20, 23.

[12] *Id.*, Exhibit C, at 20, 23.

[13] Defendant's evidentiary submission, Exhibit 2, at unnumbered page 3.

4

been responsible for approximately eighty-five percent of the corporation's revenues.[14] During 1996, SciTek experienced further cash flow problems which left it unable to cover its expenses. SciTek checks were returned for insufficient funds. Vendors consequently refused to accept the corporation's checks and demanded payment by certified bank drafts.[15] By October 31, 1996, SciTek was indebted to AmSouth Bank, N.A. ("AmSouth") and Valley Management, Inc., to the tune of some $1.3 million, which included a revolving credit line debt of $400,000 and a term loan in the amount of $900,000.[16] AmSouth and Valley Management, Inc., demanded payment of the aggregate debt and informed SciTek that it was not eligible for future loans or advances.[17]

On January 5, 1997, Jerry Crutcher sent a memorandum to plaintiff and others within SciTek, notifying them that

> cash flow problems have resulted in unpaid withholding taxes amounting to appproximatelye [sic] $850,000 representing the period from August to the present. The company has approached the IRS to work out a payment arrangement and to try to minimize the penalties associated with this problem. A two month reprieve was granted in mid December to allow the company to present a case to avoid penalties and a plan for liquidation of the past due obligations.[18]

During the period relevant to this action, 1995 to 1998, SciTek had several bank accounts at various banking institutions. From 1995 to 1997 SciTek maintained two accounts with AmSouth (19822707 and 00255203).[19] From 1996 to 1998 SciTek had an account at Union Planter's Bank (0100011362).[20] In 1997, SciTek had an account at Colonial Bank (8011400952).[21] From 1997 to

---

[14] *Id.*, Exhibit 3, at 15.
[15] Plaintiff's Motion in Opposition to Summary Judgment, Exhibit C, at 33-34.
[16] Defendant's evidentiary submission, Exhibit 2, at unnumbered page 4.
[17] *Id.*
[18] *Id.*
[19] *Id.*, Exhibits 31, 37.
[20] Defendant's evidentiary submission, Exhibits 31, 39.
[21] *Id.*, Exhibit 40.

2000 SciTek maintained an account at Regions Bank (0438032716).[22] And finally, from 1997 to 1999 SciTek maintained three accounts with Wells Fargo Bank (0743705170, 0819526807, and 0819518812).[23] Plaintiff possessed check signing authority on each of the AmSouth accounts, the Union Planter's Bank account, the Colonial Bank account, and one of the Wells Fargo Bank accounts.[24] Plaintiff signed numerous checks on behalf of SciTek from 1995 to 1998, which included utility payments, 401k payments, employee salary payments, and tax payments.[25] Since 1996, SciTek has paid in excess of $3.7 million in employee wages and salaries.[26] During 1996, SciTek paid rent in the amount of $225,000.[27] In 1997, SciTek paid approximately $204,750 in rent, and in 1998, SciTek paid approximately $54,067 in rent.[28] Plaintiff also signed contracts on behalf of SciTek.[29]

From 1995 to 1997, Jerry Crutcher signed and filed SciTek's tax returns, including the quarterly tax returns relating to employee wage tax liability.[30] However, SciTek failed to pay the full amount of taxes owed for employee wages. On May 5, 1998, the IRS sent plaintiff the following notice:

> The business named above owes Federal taxes described in the enclosed Form 2751, Proposed Assessment of Trust Fund Recovery Penalty. Our efforts to collect these taxes haven't been successful, so we plan to assess a penalty against you.
>
> The law provides that individuals who were required to collect, account for, and pay

---

[22]*Id.*, Exhibit 41.
[23]*Id.*, Exhibits 42-43.
[24]*Id.*, Exhibits 32-36.
[25]*Id.*, Exhibit 31.
[26]*Id.*, Exhibits 4, 6.
[27]*Id.*, Exhibit 52.
[28]*Id.*
[29]*Id.*, Exhibits 21-23.
[30]*Id.*, Exhibits 6-11, 13, 48, 50, 51.

> taxes for the business may be personally liable for a penalty if the business doesn't pay the taxes. These taxes, which consist of employment taxes you withheld or should have withheld from employees' wages and didn't pay, are commonly referred to as trust fund taxes.
>
> We plan to charge you an amount equal to the unpaid trust fund taxes which the business still owes the government. This personal liability is called the Trust Fund Recovery Penalty. We will assess and collect the penalty as though it were a tax you owed.
>
> If you agree with this penalty, please sign Part 1 of the enclosed Form 2751 and return it to me in the enclosed envelope.
>
> If you don't agree, have additional information to support your case and wish to try to resolve the matter informally, contact the person named at the top of this letter within ten days from the date of this letter.
>
> You also have the right to appeal or protest this action, and you may also have the right to a delay before we collect the money. You may request either of these within 60 days from the date of this letter (90 days if this letter is addressed to you outside the United States)....[31]

The attached Form 2751 charted the assessment of penalties against plaintiff in the amount of $1,029,365.59.[32] One year later, on May 7, 1999, plaintiff made one payment in the amount of $117.81, and also filed a claim for refund for the $117.81 payment.[33] The IRS has not acted on plaintiff's claim for refund.[34] Plaintiff filed this action on December 10, 1999.

## II. DISCUSSION

As the Supreme Court observed in *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978),

> [s]everal provisions of the Internal Revenue Code require third persons to collect taxes from the taxpayer. Among the more important are 26 U.S.C. §§ 3102(a)

---

[31] Defendant's evidentiary submission, Exhibit 61, at unnumbered page 1.

[32] *Id.*, at unnumbered page 4.

[33] *Id.*, Exhibits 59-60.

[34] Complaint at 2, ¶ 10.

and 3402(a) (1970 ed. and Supp. V) which respectively require deduction from wages paid to employees of the employees' share of FICA taxes, and the withholding tax on wages applicable to individual income taxes. The withheld sums are commonly referred to as "trust fund taxes," reflecting the Code's provision that such withholdings or collections are deemed to be a "special fund in trust for the United States." 26 U.S.C. § 7501(a). There is no general requirement that the withheld sums be segregated from the employer's general funds, however, or that they be deposited in a separate bank account until required to be paid to the Treasury. Because the Code requires the employer to collect taxes as wages are paid, § 3102(a), while requiring payment of such taxes only quarterly, the funds accumulated during the quarter can be a tempting source of ready cash to a failing corporation beleaguered by creditors. Once net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are paid by the employer, so that the IRS has recourse only against the employer for their payment.

An employer who fails to pay taxes withheld from its employees' wages is, of course, liable for the taxes which should have been paid, §§ 3102(b) and 3403. The IRS has several means at its disposal to effect payment of the taxes so withheld. First, once it has been determined that an employer has been inexcusably delinquent, the IRS upon giving hand-delivered notice, may require the employer, thereafter, and until further notice, to deposit withheld taxes in a special bank trust account within two banking days after collection, to be retained there until required to be paid to the Treasury at the quarter's end. § 7512. Second, with respect to trust funds past due prior to any such notification, the amount collected or withheld "shall be held to be a special fund in trust for the United States [and] [t]he amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose." 26 U.S.C. § 7501. Thus there is made applicable to employment taxes withheld but not paid the full range of collection methods available for the collection of taxes generally. After assessment, notice, and demand, the IRS may, therefore, create a lien upon the property of the employer, § 6321, and levy, distrain, and sell the employer's property in satisfaction. §§ 6331 to 6344 (1970 ed. and Supp. V).

Third, penalties may be assessed against the delinquent employer. Section 6656 of the Code imposes a penalty of 5% of the underpayment of any tax required to be deposited, and 26 U.S.C. §§ 7202 and 7215 provide criminal penalties respectively for willful failure to "collect or truthfully account for and pay over" trust-fund taxes, and for failure to comply with the requirements of § 7512, discussed supra, regarding special accounting requirements upon notice by the Secretary.

*Finally, as in this case, the officers or employees of the employer responsible for effectuating the collection and payment of trust-fund taxes who willfully fail to*

8

> *do so are made personally liable to a "penalty" equal to the amount of the delinquent taxes.* Section 6672 provides, *inter alia*:
>
>> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. ...
>>
>> Section 6671(b) defines "person," for purposes of § 6672, as including "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." ...

*Slodov*, 436 U.S. at 242-45, 98 S.Ct. at 1783-84 (emphasis supplied). "Thus, § 6672 'imposes liability upon (1) a responsible person (2) who has willfully failed to perform a duty to collect, account for, or pay over federal employment taxes.' Once an individual is established as a 'responsible person,' the burden shifts to the individual to disprove willfulness." *Malloy v. United States*, 17 F.3d 329, 331 (11th Cir. 1994) (quoting *Williams v. United States*, 931 F.2d 805, 809-10, *rehearing granted and opinion supplemented*, 939 F.2d 915 (11th Cir. 1991)).

In sum, for plaintiff to be liable for the penalty assessed pursuant to 26 U.S.C. § 6672, he must be "a responsible person" who "willfully failed" to "collect, account for, or pay over" federal withholding taxes.

A. **Responsible Person**

> A responsible person within the meaning of § 6672 includes an officer or employee of a corporation who is under a duty to collect, account for, or pay over the withheld tax. *Mazo [v. United States]*, 591 F.2d [1151] at 1153[(5th Cir. 1979)]. Responsibility is a "matter of status, duty and authority, not knowledge." *Id.* at 1156. Indicia of responsibility includes the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees. It is undisputed that more than one person may be

a responsible officer of the corporation under § 6672. *Roth v. United States*, 779 F.2d 1567, 1571 (11th Cir. 1986).

*Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir. 1987); *see also, e.g., Harris v. United States*, 175 F.3d 1318, 1321 (11th Cir. 1999) ("Liability attaches to any person who, based on her status in the corporation, has the 'actual authority or ability' to pay the taxes.") (quoting *Barnett v. IRS*, 988 F.2d 1449, 1545 (5th Cir. 1993)); *George v. United States*, 819 F.2d 1008, 1011 (11th Cir. 1987) (Taxpayer who was vice-president, director, and fifty percent shareholder of the corporation, and who also possessed signing authority on corporate bank accounts and the authority to hire and fire employees was deemed a responsible person); *Neckles v. United States*, 579 F.2d 938, 940 (5th Cir. 1978) ("The fact that others may also have had the duty and authority to remit the taxes does not relieve the appellant of section 6672 liability.").[35]

In the present case, plaintiff argues that he is not a "responsible person" under §6672 because:

> there was only one person at SciTek who had the power to control the decision-making process regarding the allocation of funds to creditors.... That person was the president of SciTek, Jerry Crutcher. Buford Crutcher, the plaintiff in this case, did not have significant input or influence in the decision making process.[36]

Plaintiff further argues that:

> [t]he evidence in this case shows that Buford Crutcher and Robert Richardson were Jerry Crutcher's chief lieutenants in running SciTek. However, the accounting department and the decision as to what creditors got paid stayed under Jerry's thumb. The evidence before the Court shows that only one person at SciTek made the financial decisions as to the payment of creditors and that person was Jerry Crutcher.[37]

---

[35]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[36]Plaintiff's Brief in Opposition to Motion for Summary Judgment, at 4.

[37]*Id.* at 8.

10

In *Thibodeau v. United States*, the Eleventh Circuit reversed the district court for entering judgment in favor of a corporate president who had sued the United States to recover payments he had made in partial satisfaction of § 6672 "responsible person penalties" assessed by the IRS. The plaintiff there had served as vice-president and, at times, secretary and treasurer of a corporation formed by the taxpayer-plaintiff and his father (who owned 51% of the corporate stock and served as chairman of the board). In addition,

> [f]rom 1970 until the end of 1972, the taxpayer [plaintiff] was a salesman for the corporation, negotiating contracts and collecting accounts receivable. ... In that position, the taxpayer entered into contracts with local contractors, arranged bank financing for the corporation's accounts receivable, and signed installment sales contracts and security agreements on behalf of the corporation. In addition, the taxpayer had signatory authority on all corporate checking accounts. ... However, the taxpayer did not have direct responsibility during this time for payment of the corporation's bills or taxes. ... Those matters were handled by the taxpayer's brother and father.
>
> ...
>
> The taxpayer stated that he was the person responsible for "selling, securing contracts, running [the] office, arranging for financing, [and] some hiring & firing." ... As president, the taxpayer directed the corporation's bookkeeper to draw checks, ... and had authority to and did sign checks on behalf of the corporation. ... The taxpayer could issue payroll checks on his own ... but ... all other checks required two signatures.... [The taxpayer's] signature was required on all checks (other than payroll checks) issued by the corporation.

*Thibodeau*, 828 F.2d at 1501-02 (citations to record omitted). On the basis of such facts the Eleventh Circuit held,

> as a matter of law, the taxpayer was a responsible person within the meaning of § 6672. As stated above, the taxpayer was the president, director, and the resident agent of the corporation during the first two quarters of 1973. The taxpayer stated that he was responsible for running the office, selling, securing contracts, arranging financing, and some hiring and firing. ...

*Id.* at 1505.

11

During the time frame that is relevant to the present action, 1995 through 1998, plaintiff served as Vice President of Operations, Secretary/Treasurer, and Director of SciTek. Although his employment with the corporation was terminated during 1998, he remains a member of the corporation's board and a 12.7% stockholder. Plaintiff also has admitted that, during the relevant period, he possessed "check writing authority over some of the [corporation's] bank accounts," and that "[i]t was not uncommon when I was in the main office to have someone from accounting to bring a big stack of checks for my signature."[38] The evidence before this court also demonstrates that plaintiff had check writing authority over each of the AmSouth accounts, the Union Planter's Bank account, the Colonial Bank account, and one of the Wells Fargo Bank accounts,[39] and that he exercised that authority on a regular basis. He signed the majority of the payroll checks for the Fort Huachuca contract.[40] He also signed checks for utilities, 401k plans, payroll, rent, and taxes.[41] Additionally, plaintiff took part in hiring decisions,[42] and participated in major decisions by the Board of Directors, such as the dissolution of SciTek's salary deferral and profit sharing plan.[43] He was responsible, at least in part, for the procurement of additional contracts, negotiating and modifying contracts, and the procurement of funding.[44] Thus, like the taxpayer in *Thibodeau*, plaintiff had the requisite status and duties of "a responsible person."

Also like the taxpayer in *Thibodeau*, plaintiff in the present action argues that he lacked the requisite authority to be considered a responsible person. A similar contention was rejected in

---

[38] Plaintiff's Motion in Opposition to Summary Judgment, Exhibit A.
[39] Defendant's evidentiary submission, Exhibits 32-36.
[40] Plaintiff's Motion in Opposition to Summary Judgment, Exhibit C, at 15.
[41] Defendant's evidentiary submission, Exhibit 31.
[42] *Id.*, Exhibit 19.
[43] *Id.*, Exhibit 17.
[44] *Id.*, Exhibits 21-28.

12

*Thibodeau*, where the court stated:

> Although the taxpayer reported to Herman Mulder [the person to whom the taxpayer's father had sold his 51% share of corporate stock] and served at his will, this does not affect his responsibility to collect, account for, or pay over to the government the withheld taxes. Two cases, which hold that an otherwise responsible person cannot be relieved of this obligation when directed by another person not to pay the taxes, support the government's position. In *Roth*, 779 F.2d 1567, this court held that a responsible person is not relieved of the obligation to remit withheld taxes by contrary instructions from a superior officer. Although the taxes may be in the corporation's bank account, they constitute trust funds of the United States, *see* I.R.C. § 7501 (codified at 26 U.S.C. § 7501), and no instruction by the owner or CEO of a corporation may "effectively bar an otherwise responsible officer from paying these funds in accordance with the law." *Roth*, 779 F.2d 1572. Similarly, in *Howard v. United States*, 711 F.2d 729 (5th Cir. 1983), a case which is not binding precedent for us, the court held that an otherwise responsible person within the meaning of the statute remained liable for the failure to remit withheld taxes, despite contrary instructions issued by the CEO. The court stated:
>
>> Howard had the status, duty and authority to pay the taxes owed, and would only have lost that authority after he had paid them. Authority to pay in this context means *effective power* to pay. That Howard had this authority is demonstrated by the fact that he did issue small checks without Jennings' approval on a number of occasions. Had Jennings fired Howard for paying the taxes, Howard would at least have fulfilled his legal obligations.
>
> *Id.* at 734-35 (citations omitted) (footnote omitted) (emphasis in original). The fact that Howard had been relieved of his duties for several weeks during the relevant quarters did not change the court's conclusion. *Id.* at 734 n.4. We find the instant case indistinguishable from *Roth* and *Howard*.
>
> ...
>
> We conclude that the taxpayer possessed the status, duty and authority to make him a responsible officer within the meaning of the statute.

*Thibodeau*, 828 F.2d at 1504-05.

Plaintiff thus may not escape classification as a "responsible person" under § 6672 simply by claiming that he had no authority to ensure that the trust fund withholding taxes were paid. Plaintiff held corporate office, had the authority to disburse corporate funds, owned stock, and

13

participated in hiring decisions; therefore, he had a fiduciary duty as a responsible person to ensure that the withholding taxes were paid in full. He may not ignore, nor delegate, that duty. *See Neckles*, 579 F.2d at 940 ("Although the appellant may not always have had the 'final' say about paying creditors, in the apocalyptic sense of that word, he did have significant control over disbursements. This is sufficient for section 6672 liability to attach.")

B. **Willfulness**

> The term "willfully" is defined by prior cases as meaning, in general, a voluntary, conscious, and intentional act, such as payment of other creditors in preference to the United States, although bad motive or evil intent need not be shown. *Liddon v. United States*, 5 Cir. 1971, 448 F.2d 509, 513, *cert. denied*, 1972, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117; *Monday v. United States*, 7 Cir. 1970, 421 F.2d 1210, 1216, *Cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48; *Hewitt v. United States*, 5 Cir. 1967, 377 F.2d 921, 924. The willfulness requirement is satisfied if the responsible person acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the Government, *See Teel v. United States, Supra*, [529 F.2d 903 (9th Cir. 1976)] and *Monday v. United States, supra*, 421 F.2d at 1215, such as by failing to investigate or to correct mismanagement after being notified that withholding taxes have not been duly remitted. *Kalb v. United States*, 2 Cir. 1974, 505 F.2d 506, 511, *cert. denied*, 1975, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471; *United States v. Leuschner*, 9 Cir. 1964, 336 F.2d 246, 248.
>
> Although the Fifth Circuit recognizes that reasonable cause may excuse the failure to collect, account for, or pay over withholding taxes, *See Newsome v. United States*, 5 Cir. 1970, 431 F.2d 742, 746, the mere delegation of responsibility to another does not constitute reasonable cause. Moreover, once an assessment of penalty taxes is made and it is established that the taxpayer is a responsible person, the burden of proving lack of willfulness is on the taxpayer. *E.g., Anderson v. United States*, 8 Cir. 1977, 561 F.2d 162, 165; *Liddon v. United States, supra*, 448 F.2d at 513-14.

*Mazo*, 591 F.2d at 1154-55. *See also Malloy*, 17 F.3d at 332; *Williams v. United States*, 931 F.2d 805, 810 (11th Cir. 1991); *Smith v. United States*, 894 F.2d 1549, 1553 (11th Cir. 1990); *Thibodeau*, 828 F.2d at 1505; *George*, 819 F.2d at 1011; *Brown v. United States*, 591 F.2d 1136, 1140 (5th Cir.

14

1979); *Hornsby v. Internal Revenue Service*, 588 F.2d 952, 953 (5th Cir. 1979).

> The issue of willfulness is necessarily directed to the state of the responsible person's mind, a subjective determination. This determination is usually factual, and "if sufficiently controverted would preclude the granting of a summary judgment on penalty liability," *Teel v. United States, supra*, 529 F.2d at 905. *However, as the court held in Teel, supra, evidence that the responsible person had knowledge of payments to other creditors after he was aware of the failure to pay withholding tax is sufficient for summary judgment on the question of willfulness.*

*Mazo*, 591 F.2d at 1157 (emphasis added); *see also Thibodeau*, 828 F.2d at 1505 ("[T]he issue of willfulness *does not present a jury question* in all cases.") (emphasis supplied).

Even though the burden to disprove willfulness lies with plaintiff, he makes no argument to this court that he did not act willfully in failing to ensure that employee withholding taxes were paid. He merely relies instead on his argument that the "real power at SciTek rested with Jerry Crutcher."[45] Even assuming that assertion to be true,

> the taxpayer cannot satisfy the burden of proof merely by showing that he delegated his responsibility to someone else. Responsible persons owe a fiduciary obligation to care properly for the funds that are temporarily entrusted to them for the ultimate use of the United States. A fiduciary cannot absolve himself merely by disregarding his duty and leaving it to someone else to discharge.

*Hornsby*, 588 F.2d at 953 (citations omitted).

In *Mazo*, the former Fifth Circuit found the appellants' argument that someone else was responsible for withholding and paying taxes as unpersuasive as this court finds the present plaintiff's reliance on the contention that Jerry Crutcher was the "real power at SciTek."

> In essence the appellants' primary argument is that an issue was created with respect to willfulness by their contention that Lavoie, the controller, misled them by asserting that he had taken care of the matter or would take care of the matter for them. However, once they were aware of the liability to the government, they were under a duty to ensure that the taxes were paid before any payments were made to other creditors. If, after receiving actual notice, corporate officials could once again

---

[45] Plaintiff's Brief in Opposition to Motion for Summary Judgment, at 8.

delegate their responsibility to subordinates, then repeated escape from liability would be possible and the government would be required to monitor corporate affairs daily. The statutory concept of willfulness conveys no such meaning.

> [T]here is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation; failure to do so when there is knowledge of the liability, as was the case here, constitutes willfulness.

*Mazo*, 591 F.2d at 1157. Similarly, the Eleventh Circuit held in *Thibodeau* that

> [t]he willfulness requirement is met if there is evidence that the responsible officer had knowledge of payments to other creditors after he was aware of the failure to remit the withheld taxes. [*Mazo*, 591 F.2d at] 1154. The willfulness requirement is also met if the responsible officer shows a "reckless disregard of a known or obvious risk that trust funds may not be remitted to the government...." Irrespective of whether a responsible person disburses the withheld taxes to a creditor other than the government *before or after* the due date, the behavior is considered willful. *Newsome*, 431 F.2d at 745.

*Thibodeau*, 828 F.2d at 1505-06 (emphasis in original).

The evidence before this court indicates that plaintiff became aware of SciTek's failure to pay employee withholding taxes no later than January 5, 1997, at which time plaintiff was a responsible person. Subsequent to his notice of the tax deficiency, plaintiff was aware that SciTek was paying creditors other than the government. SciTek continued to pay its operating expenses, which included approximately $3.7 million in payroll expenses, and approximately $258,817 in rental expenses.[46] Plaintiff signed many of the payroll checks himself.[47] Additionally, a significant portion of the rental expenses were paid to "Buford Crutcher Properties." Therefore, plaintiff favored SciTek's payment of debts owed to him over the payment of deficient withholding taxes.[48] Furthermore, plaintiff knew that Jerry Crutcher, prior to January 5, 1997, had favored the payment

---

[46] Defendant's evidentiary submission, Exhibits 52-53, 31.
[47] *Id.*, Exhibit 31.
[48] *Id.*, Exhibit 53.

16

of creditors other than the government. Thus, at the very least, plaintiff's failure to take steps to ensure payment of withholding taxes constitutes "a reckless disregard of a known or obvious risk that the trust funds may not be remitted to the government." *Thibodeau*, 828 F.2d at 1506.

In summary, even when looking at the evidence in the light most favorable to plaintiff, this court finds that he was a responsible person who willfully failed to collect, account for, and pay over trust fund taxes.

A final judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 15th day of February, 2002.

_____
United States District Judge